#### DUJMOV v. MARCEV.
##### No. 16790.

Court of Appeal of Louisiana. Orleans.

Jan. 24, 1938.

Geo. P. Nosacka and Clarence E. Strauch, both of New Orleans, for appellant.

Sydney J. Parlongue, of New Orleans, for appellee.

#### JANVIER, Judge.

Dominick Dujmov, alleging that, through fraudulent misrepresentations, Steve Marcev induced him to execute a notarial act of transfer of certain movable property forming the contents of a barroom and restaurant, prays for a judgment against Marcev annulling the said transfer and recognizing Dujmov as the owner of the said property. He also sought and obtained from the district court an injunction restraining Marcev from disposing of the said property pending the final outcome of the litigation.

From a judgment in favor of Dujmov, Marcev has appealed.

The record shows that the plaintiff, Dujmov, is an illiterate native of that country now known as Jugoslavia and that he has been a resident of New Orleans for about 30 years, but has neither become an American citizen nor acquired fluency in speaking English. On May 19, 1936, by act before Alphonse Joseph Cuneo, notary public, he purchased from Steve Lucich, for $1,200, the movable effects which are involved in this suit, and at that time he took over the barroom and restaurant, which, prior thereto, had been operated by Lucich. In the establishment at that time there were beer and liquor licenses in the name of Lucich, and Dujmov did not know that these licenses were not transferable.

Steve Marcev, the defendant, also came to this country from Jugoslavia, where he had been a boyhood friend of the plaintiff. Marcev had obtained considerably more education than had Dujmov and spoke and understood the English language reasonably well.

The license inspector for the state of Louisiana, shortly after Dujmov had purchased the restaurant business and the contents of the establishment, called his attention to the illegal licenses and Dujmov discussed this situation with his friend Marcev. He testifies that Marcev advised him that it would be necessary to obtain licenses in the name of the true owner and operator of the establishment and that, since Dujmov had violated the law in attempting to operate under improper licenses, it would be better to nominally transfer the title of the restaurant to him, Marcev, in order that he, as the record owner, might obtain proper licenses, and that, if the transfer should be nominally made, he, Marcev, would turn the establishment back to Dujmov when required to do so. Dujmov charges further that Marcev stated that, since he, Dujmov, was not an American citizen, the law violation in connection with the illegal licenses might result in his deportation. He alleges further that, though the notarial act recited that a cash consideration of $700 was given, as a matter of fact no such payment was actually made.

Marcev maintains, on the contrary, that when Dujmov became frightened by the license inspector, he offered to sell the establishment for $700 and that he, Marcev, bought it for that price and paid for it in cash.

Obviously, only a question of fact is involved: Was the transfer intended to be a valid one, or did it result from the fear created in the mind of Dujmov by his more intelligent and better educated friend, Marcev?

Cuneo, the notary public, testified that Marcev came to him and asked him to prepare the act of sale and he says that "there was no cash at the time of the signing of the sale." He stated that Marcev said to him "that the trouble they had with the Supervisor of Public Accounts was with regard to the liquor license." Mr. Cuneo also testified that when Dujmov signed the act of transfer, "he told me it was a convenience."

John Loveritch, who styles himself a third cousin of defendant, Marcev, testified that he heard Marcev say to Dujmov that he should transfer the licenses to him.

On the other hand, Marcev testified that the sale was a real transaction; that he paid $700 in cash as a consideration, and that there was no agreement that he should rescind the sale when requested to do so. He is corroborated by his father-in-law, John Matulich, who states that he saw Marcev pay Dujmov the purchase price.

Defendant, Marcev, maintains that there was one other eyewitness to the transfer of the cash, a Mrs. Carrie Dufrene Foster, otherwise referred to in the record as Carrie Lafon, who could not be located at the time of the trial and who has since been discovered in Paradis, La.

We find it impossible to say that there is any substantial preponderance of evidence in favor of either of the parties and, were the matter before us without the benefit of the views of the district court, we would find it difficult to say that plaintiff has, with legal sufficiency, established the truth of the allegations of his petition.

But there are certain facts which we may take into consideration and which, in view of the finding of the trial court, justify our conclusion that the judgment appealed from should not be reversed. In the first place, we find it rather unusual that so large a sum as $700 should have been paid in cash and that, though this sum is said to have been paid as consideration for an act of transfer, if it was paid the payment was not made when the act of transfer was signed by either of the parties. Furthermore, we find it rather strange that Dujmov, who, on February 19, paid $1,200 for the restaurant and contents, should have sold it two months and ten days later at a loss of $500. The restaurant seems to have had a fair amount of trade. Of course, these circumstances which we point to may be explainable; nevertheless, our brother of the district court resolved the doubt in favor of plaintiff and the record does not warrant the conclusion that in doing so he committed manifest error.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.

Affirmed.